UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AIR 1, INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 3:07-0146 |
| | ) Judge Echols |
| BIZJET INTERNATIONAL SALES AND SUPPORT, INC., | ) |
| Defendant. | ) |

## MEMORANDUM

Pending before the Court is Defendant Bizjet International Sales and Support Inc.'s ("Bizjet's") Motion to Dismiss for Lack of Jurisdiction of the Person and Improper Venue Or, In the Alternative, Motion to Transfer Venue (Docket Entry No. 8), to which Plaintiff Air 1, Inc. ("Air 1") has responded and Bizjet has replied.

## I. FACTS

This is a diversity action related to the alleged faulty repair of airplane engines leased by Air 1 from Bizjet. The record reflects the following to be the relevant facts.

Air 1 is a Tennessee corporation with a principal place of business in Nashville, Tennessee. Bizjet is an Oklahoma corporation with a principal place of business in Tulsa, Oklahoma.

This suit was filed after Bizjet allegedly wrongfully held a Lear Jet owned by Air 1 at Bizjet's facility in Tulsa, Oklahoma, under the guise of a mechanic's lien. The seizure arose out of repair and servicing of the Lear Jet's engine by Bizjet in 2004. The servicing and repair, which Air 1 claims to have been faulty, were performed under a warranty agreement.

At some point in 2004, the Lear Jet was delivered to Bizjet's service facility in Tulsa for performance of a "hot section" service, that is, maintenance of the hot portion of the jet engine where fuel combustion takes place. Air 1 alleges that after the "hot section" service the Lear Jet engine "flamed out" at high altitude, meaning that the engine ceased to function and provide thrust to the airplane.

With the "flame out," the Lear Jet was not airworthy and Air 1 was forced to lease an engine from Bizjet. To repair the "flame out" problem, Bizjet, on two occasions in 2005, sent personnel to Tennessee to remove the faulty engine and install a leased engine. The faulty engine was then sent to Bizjet's facilities in Tulsa for diagnostics and repair.

After repair, the engine was replaced on the Lear Jet, but it "flamed out" again in 2007. At some point after the most recent "flame out," Bizjet requested that Air 1 deliver the Lear Jet to it at its Tulsa facilities so that it could inspect the engine and perform additional warranty work. After receiving possession of the Lear Jet, Bizjet refused to release the plane until Air 1 paid Bizjet for the cost of leasing a replacement engine while the Lear Jet's engine was being repaired.

In addition to the Lear Jet, Air 1 also asserts claims against Bizjet relating to a Falcon 20F airplane. That plane suffered a "bird strike" in Virginia in April 2006, when a bird was sucked into the jet turbine engine during takeoff. Bizjet mechanics went to Virginia to repair the plane but instead, according to Air 1, secured the reverse thruster so it could not be used. It appears that Bizjet has mechanic teams which travel to different states to perform service and repair.

Based on these events, Air 1 filed suit in this Court alleging breach of warranty, breach of contract, negligent repair and violation of the Tennessee Consumer Protection Act. The upshot of Air 1's claim is that Bizjet seized the Lear Jet after duping Air 1 to bring the plane to Tulsa for an inspection and additional warranty work and did substantially the same thing with respect to the Falcon airplane, except instead of seizing the aircraft, it secured the reverse thruster rendering the plane unusable.

Air 1 also sought a temporary restraining order or preliminary injunction which would require Bizjet to return the Lear Jet. That request became moot when Air 1 filed a "Notice That The

2

Request By Air 1, Inc. for Preliminary Injunctive Relief Has Been Abandoned by Air 1, Inc."
(Docket Entry No. 5).[1]

Bizjet has filed a Motion to Dismiss and/or Transfer and in support of that motion has submitted the Affidavit of Neal Uhl ("Uhl"), the Controller of Bizjet. In that Affidavit, Uhl states:

- Bizjet has been an Oklahoma corporation since 1986, with a principal and only place of business in Tulsa, Oklahoma;

- Bizjet is in the business of providing repair and maintenance services for corporate jets and is not a manufacturer of aircraft, aircraft engines, aircraft components, aircraft parts, or any other product;

- Approximately 98% of Bizjet's work on aircraft and aircraft engines is done at its only place of business in Tulsa;

- Bizjet is not qualified or authorized to do work in Tennessee; has no registered agent in Tennessee; does not own or lease real property in Tennessee; has no telephone listing or mailing address in Tennessee; and does not maintain any company files or records in Tennessee; and

- Bizjet has never conducted or undertaken any advertising directly in Tennessee, although it does advertise in national aviation magazines and maintains a passive website.

(Uhl Aff. ¶¶ 2-13).

In response, Air 1 does not directly contradict the assertions made by Uhl. Instead, it filed an Affidavit from Joel C. McGlasson ("McGlasson"), Air 1's Manager, in which he states that work authorizations and lease agreements were sent to him in Tennessee and Bizjet employees came to Nashville, Tennessee to remove the engine with the "flame out" problem and then to replace it with another engine. McGlasson also claims that Bizjet has customer representatives who are

---

[1] According to an Affidavit from the manager of Air 1, the Lear Jet was released to Air 1 after the Verified Complaint was filed in this Court.

3

responsible for certain states and that Bizjet actively solicited business from him by sending him brochures and quotes for work to be performed by Bizjet. (McGlasson Aff. ¶ 4-5).

## II. STANDARD OF REVIEW

The burden to establish the jurisdiction of the Court is on the Plaintiff. Third Nat'l Bank v. Wedge Group Inc., 882 F.2d 1087, 1089 (6th Cir. 1989); Inter-City Prod. Corp. v. Willey, 149 F.R.D. 563, 570 (M.D. Tenn. 1993). In considering a Motion to Dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the Court need not hold an evidentiary hearing, but may rely solely on the pleadings, affidavits, and other written submissions of the parties. See Third Nat'l Bank, 882 F.2d at 1089. If the Court proceeds in that manner, the burden on the Plaintiff is relatively slight, as the Plaintiff must make only a prima facie showing of jurisdiction with the Court considering the facts in the light most favorable to the Plaintiff. Id.

The Plaintiff also bears the burden of showing that venue is proper. Gomberg v. Shosid, 2006 WL 1881229 at *9 (E.D. Tenn. 2006). On a motion to dismiss for improper venue, the Court may examine facts outside the complaint, but must draw all reasonable inferences and resolve factual conflicts in favor of the Plaintiff. Gone to the Beach, LLC v. Choicepoint Serv., 2006 WL 1645046 at *2 (W.D. Tenn. 2006); Audi AG v. Izumi, 204 F.Supp.2d 1013, 1017 (E.D. Mich. 2002).

## III. ANALYSIS

### A. Personal Jurisdiction

In order for this Court to have personal jurisdiction over the Defendant, the Plaintiff must show the Defendant has sufficient minimum contacts with Tennessee such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Young v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003). Minimum contacts exist where the Defendant purposefully avails itself of the privilege of conducting activities within the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). A Defendant who invokes the benefit and protections of the state's laws "should reasonably

4

anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

A court may have either general or specific jurisdiction over a Defendant. Fortis Corporate Ins. v. Viken Ship Mgmt., 450 F.3d 213, 218 (6th Cir. 2006). In this case, Air 1 claims Bizjet is subject to the specific jurisdiction of this Court. This Court agrees, at least with regard to the claims relating to the Lear Jet.

Unlike general jurisdiction, "[s]pecific jurisdiction 'subjects the defendant to suit in the forum state only on claims that arise out of or relate to defendant's contact with the forum.'" Fortis, 450 F.3d at 218 (citation omitted). The exercise of specific jurisdiction over a non-resident defendant is valid only if it meets both the state long-arm statute and constitutional due process requirements. Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000).

Tennessee's long-arm statute provides for jurisdiction to the full extent allowed under the due process clause relating to "the transaction of any business within the state." T.C.A. § 20-2-214. Section 20-2-214(c) also permits the exercise of personal jurisdiction over a defendant when it transacts business in the state through an "agent or personal representative." T.C.A. § 20-2-214(c).

The Sixth Circuit has set forth three criteria for determining whether specific jurisdiction may be exercised consistent with due process. Those criteria are:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Southern Machine Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381-382 (6th Cir. 1968). The purposeful availment prong of the test is viewed by the Sixth Circuit "as 'essential' to a finding of personal jurisdiction," Intera Corp. v. Henderson, 428 F.3d 605 (6th Cir. 2005), and the question of whether a defendant availed itself of the privilege of acting in a state is determined by the

defendant's actions and not the plaintiff's actions. Nationwide Mut. Ins. Co. v. TRYG Intern. Ins. Co., 91 F.3d 790, 795-96 (6th Cir. 1996).

In this case, Air 1 has established that Bizjet purposefully availed itself of doing business in Tennessee in relation to the Lear Jet. It advertised in trade journals in Tennessee, had salespeople solicit work in Tennessee and sent brochures, solicited work and provided quotes to Bizjet in Tennessee. More specifically, Bizjet shipped a new engine to Air 1 in Tennessee and on two occasions sent repairmen to Tennessee to work on the Lear Jet. Such activities can in no sense be viewed as "random, fortuitous, or attenuated," nor can they be viewed as "involving the unilateral activity of another party." Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985).

Instead they show a purposeful availment of doing business with Air 1 in Tennessee. "Parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." Id. at 473. Further supporting this conclusion is the fact that Bizjet sent personnel to Tennessee on two occasions to perform warranty work. S & S Screw Machine Co. v. Cosa Corp., 647 F.Supp. 600, 610 (M.D. Tenn. 1986)( breach of warranty claim is "an additional point in favor of jurisdiction").

In reaching the conclusion that specific jurisdiction exists in relation to the Lear Jet, the Court is aware of Bizjet's contention that the Lear Jet engine was diagnosed and serviced (apparently repeatedly) in Oklahama, it was there that Bizjet allegedly damaged the engine during the "hot section" work, and it was there that Bizjet unlawfully seized the Lear Jet. However, the record suggests that the only reason the Lear Jet was serviced in Oklahoma was because Bizjet allegedly did not correct the problems while in Tennessee and Bizjet arguably tricked Air 1 into taking the Lear Jet to Oklahoma so that Bizjet could place a mechanics lien on the aircraft. Such sleight of hand, if true, does not discount the fact that Bizjet intentionally and purposefully sought to avail itself of the protection and benefit of Tennessee laws in relation to the Lear Jet.

6

As indicated, "[s]pecific jurisdiction 'subjects the defendant to suit in the forum state only on claims that arise out of or relate to defendant's contact with the forum,'" Fortis, 450 F.3d at 218, and therefore, "the cause of action must arise from the defendant's activities there." Southern Machine Co., 401 F.2d at 382. Unlike the claims relating to the Lear Jet, the claims relating to the Falcon 20F aircraft did not arise from Bizjet's actions in Tennessee. The record before the Court indicates that Air 1 contacted Bizjet in Oklahoma about a bird strike in Virginia which contaminated the airplane's engine. Air 1 contracted with Bizjet to then clean and repair the engine. Defendant's actions relating to the Falcon 20F aircraft consisted of agreeing to do the work and sending a traveling mechanics team to Virginia who in turn allegedly damaged and secured the thrust reversers so that the jet was inoperable. Bizjets allegedly improper conduct occurred in Virginia and the cause of action arose there. Thus, the "essential" purposeful availment prong is absent in relation to the Falcon 20F aircraft.

**B. Transfer**

Because the record shows sufficient ties with Tennessee to establish personal jurisdiction over Bizjet in relation to the Lear Jet, the question therefore becomes whether this action should be transferred. Bizjet asserts this case could be transferred for the convenience of the witnesses and parties pursuant to 28 U.S.C. § 1404, or for improper venue pursuant to 28 U.S.C. § 1406. The Court finds that the case should be transferred under 28 U.S.C. § 1406(a).[2]

---

[2] Defendant's alternative request for transfer under 28 U.S.C. § 1404(a) allows a district court to transfer the case for the convenience of parties and witnesses and in the interest of justice. "[I]n ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" Moses v. Bus. Card Exp., Inc., 929 F.2d 1131, 1137 (6th Cir. 1991). Even though part of the calculus is the convenience of the parties and witnesses, Bizjet has not provided the Court with information from which it could be concluded that it would be more convenient for anyone to try this case in Oklahoma as opposed to Tennessee.

7

Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice" under section 1406. Daniel v. American Bd. of Emergency Medicine, 428 F.3d 408, 435 (2d Cir. 2005). Thus, where it is in the interests of justice, the Court can either transfer the case to a forum where it could have been brought, or dismiss the action without prejudice. Trujillo v. Williams, 465 F.3d 1210, 1222 (10th Cir. 2006).

In light of the venue statue, the Court finds that it is in the interest of justice to transfer this case to the Northern District of Oklahoma. Under 28 U.S.C. § 1391, a civil action based upon diversity of citizenship may "be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action might otherwise be brought." The statute is written in the disjunctive, and only the first two possibilities are relevant here.

There is only one Defendant, Bizjet, and it is a corporation. Under 28 U.S.C. § 1391(c) a corporation shall be deemed to reside where it is subjected to personal jurisdiction. In this case, the Court has found that it has personal jurisdiction in relation to the Lear Jet claims, but not the Falcon 20F aircraft claims. As such, venue is improper in this Court in relation to claims involving one of the two aircrafts serviced by Bizjet.

However, the United States District Court for the Northern District of Oklahoma would be a proper venue for claims relating to both aircraft, and that court would have personal jurisdiction over all of the claims. See, Zimmer Enter., Inc. v. Atlandia Imports, Inc., 478 F.Supp.2d 983, 990 (S.D. Ohio 2007)(in deciding whether to transfer, court should first consider whether the transferee court would have jurisdiction over the matter and whether that court would be a proper venue for

8

the action). Oklahoma's long arm statute confers broad jurisdiction to its courts by providing that "[a] court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." 12 Ok. St. Ann § 2004(f). It "is coextensive with the constitutional limits of the Due Process Clause." Tomlinson v. H & R Block, Inc., 151 Fed. Appx. 655, 657 (10th Cir. 2005). Certainly Oklahoma has jurisdiction over claims brought against companies which are domiciled there, have extensive dealings there, and have their principal place of business there. Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453, 457 (10th Cir. 1996)(factors to be considered in determining whether forum state has jurisdiction include whether corporation solicits business in state, the extent to which the corporation holds itself out as doing business in state, and the volume of business conducted in the state by the corporation); Berr v. Borders Group, Inc., 2006 WL 1704605 at *2 (W.D. Ok. 2006)(Oklahoma district court could exercise personal jurisdiction over party and subject it to suit where the party is present within Oklahoma or its general business contacts with Oklahoma are continuous and systematic). In any event, Bizjet has effectively agreed to consent to personal jurisdiction in Oklahoma by filing a motion to transfer this case to the Northern District of Oklahoma. See, Preferred Capital, Inc. v. Associates in Urology, 453 F.3d 718, 721 (6th Cir. 2006)(citation omitted)("'[T]he requirement that a court have personal jurisdiction over a party is a waivable right and there are a variety of legal arrangements whereby litigants may consent to the personal jurisdiction of a particular court[.]'").

Because this Court finds that it has no personal jurisdiction and therefore lacks venue in relation to the Falcon 20F aircraft claims, the Court will transfer the case to a court which has jurisdiction to entertain all of the claims raised in this lawsuit in one action. The Court finds this to be in the interest of justice as it eliminates the prospect of piecemeal litigation and the possibility that the parties will have to litigate their disputes in two different forums.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Lack of Jurisdiction of the Person and Improper Venue Or, In the Alternative, Motion to Transfer Venue (Docket Entry No. 8)

9

will be granted in part and denied in part. The request that this case be dismissed will be denied. Defendant's alternative request that this case be transferred to the Northern District of Oklahoma will be granted.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

10